# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| | **CIVIL ACTION** |
| **MAURICE ROBINSON**<br>**2 Benedette Drive**<br>**Waterford Works, NJ 08089**<br>Plaintiff | **19    1881** |
| **v.** | **JURY TRIAL DEMANDED** |
| **NATIONAL RAILROAD PASSENGER**<br>**CORPORATION, d/b/a "AMTRAK"**<br>**60 Massachusetts Ave, NE**<br>**Washington, DC 20002**<br>**Defendant** | |

**FILED**

MAY 01 2019

KATE BARKMAN, Clerk
By_____ Dep. Clerk

## COMPLAINT

### NATURE OF THIS ACTION

1. In this action, Plaintiff, who is one of the very few African American Amtrak Supervisors responsible for track maintenance, seeks to recover damages under 42 U.S.C.§ 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") caused by National Railroad Passenger Corporation's, a/k/a AMTRAK,  unlawful employment practices consisting of discriminating against Plaintiff on account of race when it comes to  job assignments, job conditions, overtime, benefits, job advancement and the opportunity for seniority. Plaintiff has been discriminated against in contrast to whites who have received superior treatment. Complaints have been made by Plaintiff to management internally and to the appropriate union bargaining agent without any remedy or results. As articulated with greater particularity in the following paragraphs, Plaintiff

was and continues to this very day to be subjected to racial discrimination and a hostile working environment on account of race, despite his having previously filed a lawsuit in this same United States District Court: *Rudolf Booker and Maurice Robinson vs. National Railroad Passenger Corporation, d/b/a AMTRAK*, Case 2:12-cv-015828-JD

## **FULFILLMENT OF TITLE VII CONDITIONS**

2.      This present law suit is the partial result of dual filings with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission. ("PaHRC") EEOC Charge no. 530-2019-01004. A "Right to Sue Letter was issued by the EEOC on February 26, 2019 and Plaintiff has timely filed this law suit within the required 90 days of receipt thereof.

## **RELIEF SOUGHT**

3.      Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory and punitive damages, together with attorneys' fees, costs and expenses of this suit to redress the effects of AMTRAK's pervasive and racially discriminatory employment policies, practices and procedures. Given past history that Plaintiff has endured, the continuing presence of this Court is necessary to ensure that Defendant AMTRAK undertakes the necessary steps to arrive at a non- discriminatory and non-hostile working environment.

## **PARTIES**

4       Plaintiff Maurice Robinson ("Robinson" or "Plaintiff Robinson") is an adult African-American male who resides at 2 Benedetta Dr., Waterford Works, NJ 08089. At the times pertinent to this Complaint he was and remains an employee of AMTRAK based out of its Philadelphia, Pennsylvania station and facility, serving what is known as AMTRAK's

2

"Northeast Corridor." As an African-American male, he a member of a protected category of individuals under pertinent civil rights statutes.

5.      Defendant, National Railroad Passenger Corporation ("AMTRAK") is a for-profit corporation that operates intercity passenger rail services throughout the United States and the District of Columbia. Amtrak was created by Congress pursuant to the Rail Passenger Service Act of 1970 and incorporated in the District of Columbia in 1971, assuming the common carrier obligations of the private railroads in exchange for the right to priority access of their tracks for incremental cost. As such, it is a federally chartered corporation with the federal government as majority stockholder. The Amtrak Board of Directors is appointed by the President of the United States and confirmed by the U.S. Senate. According to its own website, AMTRAK, for the fiscal year 2018 has been heavily dependent upon government subsidy given revenues of \$3.4 billion and \$4.8 billion in capital and operating expenses. AMTRAK's website notes that it has more than 20,000 employees and touts the fact that it has been listed by Forbes magazine of America's Best Employers. While Forbes may have made that designation, it is questionable that a poll of its African American employees would show agreement.

At all relevant times, Employer has continuously been engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§2000e (b), (g) and (h).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiffs' claims for relief under   28 U.S.C. §§1331, 1337, 1343, 2201, and 2202, since those claims are based in part on violations of Section 706 (f) (1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f) (1) and (3) ("Title VII") as well as 42 U.S.C. § 1981.

3

7.      Jurisdiction is also invoked pursuant to 28 U.S.C. §1367 granting this Court supplemental or pendent jurisdiction over the state claims under the Pennsylvania Human Relations Act and Pennsylvania common law because the state claims and federal claims are so interrelated that they are the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this District under 28 U.S.C. Section 1391 (b) and (c) since AMTRAK does business and has a regional headquarters located in the Eastern District of Pennsylvania and Plaintiff works in the same District.

9.      Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. A charge was filed with the Equal Employment Opportunity Commission ("EEOC") on November 20, 2018.    As a matter of course, filing with the EEOC in Pennsylvania triggers a dual filing with the Commonwealth of Pennsylvania Human Relations Commission. The EEOC assigned #530-2019-01004 to this matter and a "Right to Sue" letter was issued by the EEOC to Plaintiff dated February 26, 2019. Accordingly, Plaintiff filed suit to enforce his federal and state civil rights claims within ninety (90) days of receipt of that "Right to Sue" letter.

10.     Plaintiff has complained to management and filed a complaint internally with Amtrak's HR Compliance & Risk Management wherein he alleged mistreatment in violation of Amtrak's Anti-Discrimination and Anti-Harassment Policy. Nothing to date has been done by Amtrak's HR Compliance & Risk Management and as a result of their refusal to speak with Plaintiff, he has been forced to bring this lawsuit.

11.     Finally, by email of July 10, 2018, Plaintiff asked his ARSA union representative to "file an official grievance" over his mistreatment that is the subject of this lawsuit.

4

## BACKGROUND FACTS: AMTRAK's HISTORY OF DISCRIMINATION

12.     AMTRAK in its booklet for employees makes the following statement under the heading "DISCRIMINATION."

> Amtrak will continue to be a leader in providing equal opportunity for employees in a work environment free of discrimination and harassment. As a matter of policy, we manage this company and administer our programs without regard to race, color, religion, sex, national origin, age, disability, sexual orientation or veteran's status and in conformance with all applicable federal, state and local laws.
>
> Therefore, we will not tolerate discrimination or harassment of any kind by our employees towards our customers or coworkers, including but not limited to racial, ethnic, religious or sexual slurs, whether written or spoken.

However, history has shown AMTRAK to be anything but "a leader in providing equal opportunity." To the contrary, Defendant AMTRAK has historically had an abysmal record when it comes to discrimination. What is more, as specifically learned with respect to this law suit, Defendant AMTRAK keeps track and/or profiles black employees when it comes to their salary, overtime and benefits earned.

THE CASE OF JAMES THORNTON ET AL vs. NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK") No. Civ. A. 98-890 (EGS)

13.     Plaintiff Robinson's claims underline the failure of AMTRAK to follow the letter and spirit of *Thornton et al vs. National Railroad Passenger Corporation.*  In April, 1998 a group of African-American AMTRAK employees and one African-American who was not hired by AMTRAK, filed a class action in the Federal District Court for the District of Columbia in the matter of *James Thornton et al vs  National Railroad Passenger Corporation ("AMTRAK")* No. Civ. A. 98-890 (EGS). They claimed that their civil rights had been violated with respect to AMTRAK's training, discipline and promotions.  The Complaint alleged violations of 42 U.S.C. Section 2000d (Title VI), 42 U.S.C. Section 2000e (Title VII) and 42 U.S.C. Section 1981. After

5

the Court dismissed the Title VI claim on or about June 24, 1998, the case was subsequently

settled for $16 million and injunctive relief, subject to a consent decree that was in force until

July 31, 2004.  Section 5 of the consent decree was extended until July 31, 2008 as it pertained to

incorporating injunctive provisions with respect to training and discipline into the collective

bargaining agreement by and between AMTRAK and the Brotherhood of Maintenance of Way

Employees, Division of the International Brotherhood of Teamsters executed January 17, 2008.

On February 7, 2008 the Consent Decree was terminated and the case was dismissed.

14.      As testified to by Plaintiff in his deposition in the civil rights case of *William Robinson*

*vs. AMTRAK and Brotherhood of Maintenance of Way Employees,* 2:18-cv-00341 ER, Plaintiff's

experience since the *Thornton* result *was that nothing had changed.* "All that happened was that

a check was written. There was nobody held accountable. And it was documented that there were

managers that were taking care of the 'good old boy' crew. In my opinion, for it to matter,

someone had to be held accountable. Someone should have lost their job." (Dep Tr. Maurice

Robinson, page 19)

## BACKGROUND FACTS AS TO MAURICE ROBINSON PERTINENT TO HIS PRIOR LITIGATION AGAINST AMTRAK

15.      Plaintiff, Maurice Robinson followed in his father Wilson Robinson's footsteps, who

himself worked for AMTRAK starting in 1977, staying in a trackman's welder 's position, never

desiring to become a supervisor because of continued and blatant discrimination that he had

witnessed and endured. Plaintiff's father discouraged Plaintiff Robinson from attempting to

progress through the various levels of seniority and responsibility at AMTRAK because of the

discriminatory environment, telling Plaintiff repeatedly that the only difference between his

6

tenure and Plaintiff's was that then, a black was called "nigger" to his face, whereas now they say it behind your back.

16.     Plaintiff Maurice Robinson began his employment with AMTRAK in 1999 as a trackman. He has subsequently worked as a machine operator, electric arch welder, oxygen acetylene welder, thermite welder, termite and electric arch welder foreman and track foreman. On May 4, 2009, he was promoted to the position of Track Supervisor for the concrete tie gang. At that time, he was the only African-American supervisor in System Production in AMTRAK's Eastern Corridor and the only African-American supervisor on AMTRAK property with the exception of an African- American supervisor in Washington, D.C.   His gang, one of eleven in the region, consisted solely of blacks and other minorities with the responsibility of inspecting and maintain the railroad track beds up and down the AMTRAK Northeast corridor. Plaintiff Robinson's gang was referred to by management and employees as the "black gang". The other ten gangs were comprised of whites who received more favorable treatment.

17.     As a result of the discrimination he experienced with respect to the "black gang", along with discrimination when it came to training, discipline, job assignments, job conditions, benefits, job advancement and the opportunity for seniority, on March 27, 2012 he and fellow AMTRAK employee Rudolf Booker filed a three count civil rights complaint, *Booker and Robinson vs. National Railroad Passenger Corporation, d/b/a "AMTRAK in* this court, case 2:12-cv-01528-JD. This case was subsequently settled on July 16, 2014.  In his above-referenced deposition he was asked "Did things get better after that? Everything great at AMTRAK?", his answer was "No. Things did not change." (Maurice Robinson Tr. Page 36) "But once again, nobody was held accountable." (Maurice Robinson Tr., page 37)

## FACTS AS TO MAURICE ROBINSON PERTINENT TO THIS LITIGATION AGAINST AMTRAK

18.     Notwithstanding *Booker and Robinson vs. AMTRAK*, and the discrimination cases that have preceded and followed it, black AMTRAK employees in general and Plaintiff, specifically as set forth hereinafter, has continued to experience discrimination. Specifically, Plaintiff has maintained statistics with respect to discriminatory practices in the promotion of white employees versus African-American employees.

19.     After his first litigation wherein Plaintiff complained of his demotion from supervisor to foreman, Plaintiff was able to regain supervisor status in 2014, as supervisor of the tie gang in Aberdeen, Md.  Eventually he came back to Philadelphia in 2015 where he was the nighttime maintenance supervisor supervising the frog welding gang, two maintenance gangs, a thermite welding gang and a "multi-maintenance unit", i.e., a production gang that performed welding functions. However, problems remained as Plaintiff objected to AMTRAK practices which not only deprive blacks, including Plaintiff, of overtime, but restricts Plaintiff as a Supervisor from properly doing his job so as to ensure track safety.

20.     In 2018, Plaintiff was unhappy with the treatment he was receiving in Philadelphia where he experienced discrimination in contrast to his white counterpart, Patrick Collins, who had the same position. Notwithstanding the fact that Collins had two assistants and Plaintiff only had one, Plaintiff was expected to maintain the same amount of production with only one assistant, being short one supervisor, and with no overtime. Plaintiff complained to Frank Kruse and another manager. As testified to in his previously referenced deposition, Plaintiff said:

> And I asked Frank, how is it possible that my predecessor got overtime and had an extra body? I said, Frank, I can't  I can't get all of this work done unless you, you know, can give me two hours of overtime a day so that I can get all of the paperwork done or it's the company's prerogative, you don't have to give me any overtime.

8

Advertise the vacant assistant position so that I can have help. He laughed and said denied to both. (Tr. Maurice Robinson, page 105, 106.)

21.     Plaintiff's white predecessors in the job did not have the same problem. When Frank Kruse was promoted, Keith Keene replaced him. For a short while, Plaintiff was approved for two hours of overtime. Then overtime was cut. Given the fact that safety was at issue. "For some time, myself and my assistant, Aaron Johnson, we were working 12-hour days but only getting paid eight, because I believed that being a supervisor is an honor and it's a duty that we have, because I also take my family on the train." (Tr. Maurice Robinson, page 107.) Disgusted with the situation, Plaintiff bid for the TLS Track Supervisor position on January 20, 2018. This position entailed supervisory control over the largest production group on AMTRAK property and approximately 163 employees.

22.     Concerned that he would not be awarded the position despite his obvious qualifications and seniority, Plaintiff "bid" for the job at the very last minute on Saturday, the last day, so that management would be caught unaware. Management favored and expected Ed Schloemann, a white supervisor under Plaintiff, to get the job.  In fact, Mr. Schloemann had announced to the working group what he was going to do once he got the job.   Instead of going to the Assignments and Bulletins Office, Plaintiff bid by email and won the job.

23.     On February 1, 2018, Amtrak held a retirement breakfast for Plaintiff's predecessor in the job. Incredibly, Plaintiff was referred to by Mr. Brady Holloway as the "new supervisor". Plaintiff corrected this misrepresentation stating that he was not new to TLS; that he was a foreman with the group in 2006 and a supervisor in 2014. Plaintiff was and remains anything but "new". However, Plaintiff only held the job for five days, before the job was abolished. Plaintiff was told that the job was abolished because management did not want Plaintiff to make as much

9

money as his retiring Caucasian predecessor, Raymond Mane, made in the position. Upon information and belief, Mr. Mane made well over a quarter of a million dollars a year for four years.

24.     Plaintiff learned that there had been a meeting attended by Andrew Keefe and Linda Murphy promptly after Plaintiff gained the job and that they made the decision to abolish it. He started the job on a Monday and it was abolished on a Friday without Plaintiff's being told by management.

25.     Plaintiff has further learned that Mr. Michael Rodden and Mr. Aaron Johnson witnessed Manager Peter Cirard admit that Senior Manager and Vice President of Maintenance Andrew Keefe had abolished Plaintiff's job stating that "there was no way that Maurice Robinson was going to make as much money as Ray" (Plaintiff's Caucasian predecessor).

26.     Defendant AMTRAK subsequently advertised a position called TLM Supervisor as TLM is one of the six work groups of the TLS with a total of only 38 employees. When Plaintiff was approached about taking the job of TLM Supervisor, Plaintiff asked Mr. Brady Holloway if the TLM would be his only responsibility and was specifically told that his responsibility would be the entire TLS. When Plaintiff inquired further, he learned that the new job was virtually the same, but without the continued provision of overtime for him. When Plaintiff asked if the job and/or overtime would have been abolished if Ed. Schloemann had gotten the job, Mr. Holloway's answer was "I do like Ed.".

27.     As things stand, Plaintiff is the only full supervisor in TLS, senior to all of the assistant supervisors who get overtime in stark contrast to Plaintiff.

28.     It is abundantly clear to Plaintiff that management wants Plaintiff to leave his present position, such has been historically been the case with other blacks in the position. Moreover, it

10

is abundantly clear that overtime has been restricted or eliminated altogether when Plaintiff was in a position and then reinstituted when he left the position, as admitted to Brian Collins, a Caucasian who replaced Plaintiff in the position of Track Supervisor of Maintenance for Philadelphia. After a meeting with Plaintiff and others, Mr. Collins admitted to Plaintiff "Do you notice that the overtime stopped when you were here, and now that I'm here, we're making as much money as I want." After that comment, System Division Engineer Keith Keene, who was also present, admonished Mr. Collins about having made that admission.

29.    Amtrak's position with respect to Plaintiff not only is discriminatory but impairs railroad and passenger safety.

30.    Plaintiff has complained to management and the ARSA union about this discrimination.

## COUNTS

## COUNT I

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

### Maurice Robinson v. AMTRAK

31.    Plaintiff restates and realleges paragraphs 1 through 30 as though set forth here in full.

32.    Defendant AMTAK has discriminated against Plaintiff by denying him the same rights as are enjoyed by white employees with respect to performance, terms, location, conditions, benefits, privileges, promotion, discipline and emoluments of their employment relationship with AMTRAK in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

33.    AMTRAK's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the named Plaintiffs.

11

34.     By reason of the continuous nature of AMTRAK's discriminatory conduct, persistent

throughout the employment of Plaintiff, the named Plaintiff is entitled to application of the

continuing violation doctrine to all of the violations alleged herein.

35.     By reason of AMTRAK's discrimination, Plaintiff is entitled to all legal and equitable

remedies available under § 1981, including but not limited to damages for mental anguish and

punitive damages.  Plaintiff is also entitled to award of all relief available under 42 U.S.C §1988.

## COUNT II

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq* RACIAL DISCRIMINATION and MAINTENANCE OF A HOSTILE WORK ENVIRONMENT

### Maurice Robinson v. AMTRAK

36.     Plaintiff restates and realleges paragraphs 1 through 35 as though set forth here in full.

37.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* as amended by the

Civil Rights Act of 1991 ("Title VII), makes it unlawful to discriminate against any individual in

the terms, conditions, or privileges of employment on the basis of race

38.     Discrimination on the basis of race that creates an abusive and hostile work environment,

such that the conditions of employment are altered, is actionable under Title VII as racial

discrimination. In order to establish a hostile work environment, five factual elements must be

established: (1) that the employee suffered intentional discrimination because of his or her race;

(2) that the discrimination detrimentally affected him or her; (3) that the discrimination was

pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person

in the same position as the employee; and (5) that respondeat superior liability exists. In the

12

totality of circumstances described in the Background Facts, the foregoing five elements are established.

39.     AMTRAK is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of its managers and employees.

40.     AMTRAK is liable for the acts of management and Plaintiff's co-workers, because it knew of their proclivities permitting discrimination and a hostile work environment to exist, but did nothing about it.

41.     AMTRAK is liable for the acts alleged herein because its board, owners and managers established the corporate culture at AMTRAK which encouraged racial discrimination, harassment and retaliation.

42.     Based upon the foregoing facts, AMTRAK has discriminated against Plaintiff on the basis of his race, retaliated against him for standing up for himself and have deprived him of his rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq. as amended.*

43.     AMTRAK's conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Plaintiff.

44.     AMTRAK's policies and/or practices have produced a disparate impact against the Plaintiff with respect to the terms and conditions of employment.

45.     By reason of AMTRAK's discrimination, the named Plaintiff is entitled to all legal and equitable remedies available.

## COUNT III

**RACIAL DISCRIMINATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**

13

## Maurice Robinson v. AMTRAK

46.     Plaintiff restates and realleges paragraphs 1 through 45 as though set forth here in full.

47.     The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

48.     Racial discrimination that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under the Pennsylvania Human Relations Act as race discrimination.

49.     With respect to allegations of discrimination and retaliation, AMTRAK, as the employer, is strictly liable for the acts of the supervisory management employees, because the harassers and those who effectuated the discrimination used their actual or apparent authority to further the unlawful conduct, and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

50.     AMTRAK is liable for the acts of management and co-workers of Plaintiff because it deliberated failed to follow established complaint procedures and investigate Plaintiffs' complaints.

51.     AMTRAK is liable for the acts alleged herein because the AMTRAK's managers and supervisors established the corporate culture at the AMTRAK facility, which encouraged racial discrimination as well as a hostile work environment.

52.     Based upon the foregoing facts, AMTRAK has discriminated against Plaintiff on the basis of his race and has deprived him of his rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. seq.*

53.     As a result of such conduct by AMTRAK, Plaintiff has suffered damages as a consequence of AMTRAK's illegal conduct.

54.     The described unlawful employment practices by AMTRAK were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the laws of the Commonwealth of Pennsylvania. These unlawful acts were committed because of his race and the fact that he stood up for themselves in opposition to illegal practices directed against him.

55.     AMTRAK's actions have caused Plaintiff to suffer injury and damages in contravention of the laws of the Commonwealth of Pennsylvania.

## RELIEF REQUESTED

This civil action seeks on behalf of Plaintiff, legal and equitable relief including:

a.     A declaratory judgment declaring that Defendant has illegally discriminated against Plaintiff because of the color of his skin in violation of 42 U.S.C.§ 1981, Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C. § 2000e et seq.and, the Pennsylvania Human Relations Act.

b.     An appropriate remedial order, granting injunctive relief, directing and requiring the following:

i.     Appointment of a civil rights monitor or trustee over AMTRAK's operations, fully empowered to implement any injunctive relief issued by this Court, to oversee any and all AMTRAK employment practices until such time as AMTRAK no longer discriminates against African American employees.

ii.     Cease and desist all acts of proscribed racial discrimination as required pursuant to 42 U.S.C. Section 1981.

iii.     Such other remedial action as is needed to enforce compliance with all relevant standards of non-discrimination on the basis of race or color.

15

      iv.     Reinstatement of seniority and benefits with back and front pay for Plaintiff.

    c.  Reinstatement of seniority and benefits with back and front pay for Plaintiffs and payment of compensatory and punitive damages, together with attorneys' fees and the costs of suit to Plaintiff in excess of $150,000, in an amount to be determined at trial pursuant to Title VII, 28 U.S.C. § 1981

    d.  Payment of compensatory damages, together with attorney's fees and the costs of suit to Plaintiff in excess of $150,000 in an amount to be determined at trial pursuant to the Pennsylvania Human Relations Law.

    e.  Such other and further relief as the Court may deem just and proper.

    f.  Retention of jurisdiction by this Court until such time as the Court is satisfied that AMTRAK has remedied the practices complained of herein and is determined to be in full compliance with the law.

**JURY DEMAND**

The Plaintiff demands trial by jury of all issues triable of right to a jury.

FILED

MAY 01 2019

KATE BARKMAN, Clerk

Respectfully submitted this first day of May, 2019.

/s/ Mark D. Schwartz
Mark D. Schwartz, Esquire
300 Sandcastle Drive
Bryn Mawr, PA 19010-0330
Telephone & Fax: 610 525-5534
Email: MarkSchwartz6814@gmail.com
Pa. I.D. #30527

Attorney for Plaintiff,
Maurice Robinson

16

17