**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MAURICE ROBINSON**<br><br>v.<br><br>**NATIONAL RAILROAD PASSENGER CORPORATION** d/b/a **"AMTRAK"** | **CIVIL ACTION**<br><br>**NO. 19-1881** |

**MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                        **August 18, 2020**

### I.     INTRODUCTION

In this employment case, Plaintiff Maurice Robinson contends that Defendant National Railroad Passenger Corporation ("Amtrak") created a hostile work environment and discriminated against him based on his race, culminating in the elimination of the supervisor position he attained less than two weeks earlier. Plaintiff filed a Complaint in this Court, alleging three Counts against Amtrak:

1. **Count I**: Violations of 42 U.S.C. § 1981;

2. **Count II**: Discrimination and Maintenance of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964; and

3. **Count III**: Discrimination and Maintenance of a Hostile Work Environment in violation of the Pennsylvania Human Relations Act ("PHRA").

(ECF 1, Compl.)

Before the Court is Amtrak's Motion for Summary Judgment (ECF 16 "Amtrak's MSJ.") For the reasons stated below, Amtrak's Motion will be granted as to Plaintiff's hostile work environment claims under Title VII and the PHRA, but will otherwise be denied.

1

## II. FACTUAL BACKGROUND

Because Plaintiff did not file a separate statement of facts in numbered paragraphs, the following facts are drawn from Amtrak's Statement of Undisputed Facts (ECF 16-2 "Amtrak's SUF") in the light most favorable to Plaintiff,[1] or from the facts stated in Plaintiff's Opposition Brief (ECF 18 "Pl.'s Opp'n.")

Plaintiff has been an Amtrak employee since 1999. From 2015 to 2018, Plaintiff was a maintenance supervisor in Philadelphia, and Frank Kruse was Plaintiff's direct superior. According to Plaintiff, Kruse allocated overtime in a way that favored workers within the "Irish Connection," and disadvantaged black workers. When black employees raised this issue, Kruse would ask why the "brothers" always had to complain. (Pl.'s Opp'n Ex. E, Robinson Dep. 136:20–22.) Plaintiff also recounted comments Kruse made while he supervised Plaintiff, including that Plaintiff's "dark ass [wa]s lucky that [he] got a job," (id. at 135:12–15), and that when one of Plaintiff's black colleagues was being considered for a promotion, Kruse responded that he did not "want a threatening black man like that as an assistant supervisor," (id. at 138:14–19.)

In 2018, Plaintiff privately bid for—and received—a Supervisor position in the Track Laying System ("TLS") of Amtrak's Engineering Department. TLS is an umbrella organization, which includes seven subgroups, including the Track Laying Maintenance ("TLM") gang. According to Amtrak, even before Plaintiff bid for the TLS Supervisor position, Engineering Production Manager Brady Hollaway began laying the groundwork to reorganize the supervisor structure within TLS. At the time, TLS functioned with one supervisor and one assistant

---

[1] Plaintiff purports to dispute certain facts asserted by Amtrak because they are "self-serving" and were "not subject to cross examination." (ECF 18-3, Pl.'s Resp. to Amtrak's SUF 2–4.) Plaintiff's argument in this regard does not, by itself, put these facts in dispute. See Maldonado v. Ramirez, 757 F.2d 48, 50–51 (3d Cir. 1985) (explaining that an affidavit can be considered at summary judgment if it complies with Fed. R. Civ. P. 56(e)).

supervisor, but Hollaway wanted to add three more assistant supervisor positions so he could spread the supervisors out among TLS's subgroups, including TLM. (Amtrak's SUF ¶¶ 71–73.)

Plaintiff was awarded the TLS Supervisor position in January of 2018. Amtrak asserts that shortly after Plaintiff received the TLS Supervisor position, Hollaway learned that leadership at Amtrak approved only two of the three additional assistant supervisor positions that Hollaway requested. However, because Hollaway still wanted to change the structure of TLS, he decided to abolish the TLS Supervisor position and replace it with supervisor position within the TLM subgroup. (Amtrak's SUF ¶¶ 83–87.)

Plaintiff disputes Amtrak's narrative of the decision-making process. Amtrak's Director of Production Joseph Cavanaugh testified in his deposition that it was Vice President Andrew Keefe and Manager of Workforce Linda Murphy's decision to dissolve the TLS Supervisor position, and that Hollaway was not involved. (Pl.'s Opp'n Ex. C, Cavanaugh Dep. 26:7–18.) As to the motivation behind the elimination of his position, Plaintiff testified in his deposition that shortly before the TLS position was eliminated, his colleague, Peter Cirard, overheard Keefe tell Murphy that he wanted to abolish the TLS Supervisor position to prevent Plaintiff from making as much money as Plaintiff's white predecessor. (Pl.'s Opp'n Ex. A, Robinson Dep. 184:14–20.)

In any event, Plaintiff's TLS Supervisor position was dissolved on February 3, 2018—less than two weeks after Plaintiff accepted the promotion. (Amtrak's SUF ¶ 102.) Amtrak subsequently opened several assistant supervisor positions, and Plaintiff was ultimately reassigned as the supervisor of the TLM subgroup. (Amtrak's SUF ¶ 103.) As the supervisor structure shifted in TLS, Plaintiff received fewer opportunities to work overtime than he would have if he remained TLS Supervisor. (Pl.'s Opp'n Ex. C, Cavanaugh Dep. 44:6–21.)

### III. PROCEDURAL HISTORY

Plaintiff filed a charge with the EEOC on November 20, 2018, (Amtrak's MSJ Ex. C, Robinson Dep. Ex. 7), and filed a Complaint in this Court on May 1, 2019. (ECF 1.) Following discovery, Amtrak filed a Motion for Summary Judgment. (ECF 16.) Plaintiff filed a Response in Opposition, (ECF 18), and Amtrak filed a Reply, (ECF 19.)

### IV. LEGAL STANDARD

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of

evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

V. **PARTIES' CONTENTIONS**

    A. **Amtrak**

Amtrak argues that Plaintiff's claims are precluded by the Railway Labor Act ("RLA") because the adverse employment action he complains about implicates lost opportunities for overtime, and overtime is governed by the CBA. (Amtrak's MSJ 18–20.)

As to Plaintiff's race discrimination claims, Amtrak asserts that Plaintiff's reassignment to the TLM Supervisor position did not constitute an adverse employment action because he received the same pay rate and continued to work substantial amounts of overtime. (Amtrak's MSJ 23–25.) Amtrak also contests whether the circumstances surrounding Plaintiff's reassignment give rise to an inference of discrimination, because he cannot point to a similarly situated person who was treated more favorably, or show that he was replaced by someone outside of his protected class. (Amtrak's MSJ 27–29.)

Amtrak asserts that Plaintiff's TLS Supervisor position was abolished for a non-discriminatory reason: to spread out supervisory duties among TLS's seven subgroups. (Amtrak's MSJ 30–31.) As to whether this asserted reason was pretext for discrimination, according to Amtrak, the reorganization of TLS was planned before Plaintiff was promoted to the TLS Supervisor position, and thus the decision to abolish his position could not have been pretextual. (Amtrak's MSJ 35.)

Amtrak also contends that summary judgment should be granted on Plaintiff's hostile work

environment claims under Title VII and the PHRA because Plaintiff failed to exhaust his administrative remedies. Amtrak further contends that Plaintiff's Section 1981 hostile work environment claim fails because he has not identified severe or pervasive harassment. (Amtrak's MSJ 39–42.)

### B. Plaintiff

Plaintiff contends that civil rights laws such as Title VII and Section 1981 are not precluded by the RLA. (Pl.'s Opp'n 25–26.) As to his discrimination claims, Plaintiff argues that the loss of his position as TLS Supervisor impacted his status and authority within the workplace, and therefore constitutes an adverse employment action. (Pl.'s Opp'n 20.) Plaintiff also contends that circumstantial evidence in this case permits an inference of discrimination. (Pl.'s Opp'n 20–21.) Plaintiff challenges Amtrak's articulated non-discriminatory reason for abolishing Plaintiff's supervisor position, and argues that the inconsistent reasons given by Amtrak's management alone creates a genuine issue of material fact sufficient to survive summary judgment. (Pl.'s Opp'n 22–23.)

Plaintiff also asserts that his hostile work environment claim were encompassed within his EEOC charge, and contends that the evidence shows a culture of severe and pervasive hostility towards Plaintiff and other black employees at Amtrak. (Pl.'s Opp'n 23–25.)

## VI. DISCUSSION

### A. Plaintiff's Claims are Not Precluded by the RLA

Amtrak contends that Plaintiff's claims constitute a "minor dispute" under the RLA, and are therefore precluded. The RLA "establishes a mandatory arbitral mechanism" for major and minor disputes, the latter of which "involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" Hawaiian Airlines, Inc. v. Norris,

512 U.S. 246, 252–53 (1994) (quoting <u>Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R. Co.</u>, 353 U.S. 30, 33 (1957)). For minor disputes, the RLA precludes a claim if it "depends on an interpretation of the CBA," but not "if it involves rights and obligations that exist independent of the CBA . . . ." <u>Id.</u> at 260–61. Indeed, "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement,'" and thus claims based upon such questions are not precluded by the RLA. <u>Id.</u> at 261 (alteration in original) (quoting <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 407 (1988)).

Here, Plaintiff's claims are not precluded by the RLA because they do not require interpreting the CBA. The core of Plaintiff's claims are that Amtrak discriminated against him by abolishing the position of TLS Supervisor to which he had just been promoted. The question of whether Amtrak discriminated against Plaintiff is independent of the CBA's overtime provisions that Amtrak contends trigger preclusion. Just because Plaintiff argues that Amtrak's discriminatory conduct restricted his opportunities for overtime, and overtime rules are governed by the CBA, does not mean that Plaintiff's claims are inextricably intertwined with interpreting the CBA such that they are precluded. Plaintiff's claims are not the type of "minor dispute" that the RLA precludes.

**B. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Race Discrimination Claims**

Plaintiff's race discrimination claims under Title VII, Section 1981, and the PHRA, are all governed by the burden-shifting framework set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Jones v. School Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999). Under the <u>McDonnell Douglas</u> framework, it is the plaintiff's initial burden to establish a prima facie case of discrimination or retaliation. <u>Id.</u> If the plaintiff satisfies his or her burden, the burden then shifts

to the defendant to articulate a legitimate non-discriminatory reason for the taken course of action. Id.  If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's articulated reason is pretext for impermissible discrimination or retaliation.  Id.

### 1. Plaintiff's Prima Facie Case

To establish a prima facie case of race discrimination requires proof of the following elements:

(1) that he was a member of the protected class;

(2) that he was qualified for his position;

(3) that he suffered an adverse employment action; and

(4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination

Pivirotto v. Innovative Sys. Inc., 191 F.3d 344, 352–53, 356–57 (3d Cir. 1999).

Amtrak challenges whether Plaintiff suffered an adverse employment action, and, if so, whether that action occurred under circumstances giving rise to an inference of discrimination. Plaintiff has produced enough evidence to show that the elimination of his position as TLS Supervisor, and his reassignment to the inferior position of TLM Supervisor, was an adverse employment action, even if he still received the same amount of pay.  See McGrenaghan v. St. Denis Sch., 979 F.Supp. 323, 326 (E.D. Pa. 1997) (VanArtsdalen, J.) ("A job transfer may constitute an adverse job action even where the pay and benefits are identical if there is a reduction in other terms, conditions, or privileges of employment.").

Plaintiff's evidence could also support a jury finding that his demotion occurred under circumstances giving rise to an inference of discrimination.  Because Plaintiff was not replaced, he can satisfy the fourth element if he "can provide facts which 'if otherwise unexplained, [show that the adverse action was] more likely than not based on the consideration of impermissible

8

factors.'" Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (quoting Pivirotto, 191 F.3d at 352). The close temporal proximity of less than two weeks between Plaintiff's promotion and the dissolution of his supervisor position could support a reasonable jury inferring a causal link between Plaintiff's race and the adverse employment action. Cf. LeBlanc v. Hill Sch., No. 14-1674, 2015 WL 144135, at *19 (E.D. Pa. Jan. 12, 2015) (Padova, J.) ("Thirteen days between protected activity and an adverse employment action may be unusually suggestive of [an impermissible] motive.").

Further, the fact that Plaintiff's position was eliminated shortly after Keefe was heard saying that he would not allow Plaintiff to earn as much money as Plaintiff's white predecessor further supports an inference that a causal link exists between Plaintiff's race and the dissolution of his position. If left unexplained, these circumstances could lead a reasonable jury to find that Plaintiff's race drove the decision to abolish the TLS Supervisor position. Plaintiff has therefore presented enough evidence to establish a prima facie case of discrimination.

### 2. Pretext

If accepted by a jury, Amtrak's assertion that Hollaway abolished Plaintiff's position to reorganize the TLS leadership structure is a legitimate, non-discriminatory reason for its adverse employment action. Thus, to survive summary judgment, Plaintiff must raise evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Amtrak's proffered reason such that "a reasonable factfinder could rationally find [it] 'unworthy of credence,' and hence infer 'that [Amtrak] did not act" for that reason. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (citations omitted). If Plaintiff's evidence could cause a reasonable jury to disbelieve Amtrak's proffered non-discriminatory reason, Plaintiff can survive summary judgment on the strength of his prima facie case alone. Id. at 764.

9

Plaintiff has raised enough evidence to call into question Amtrak's asserted reason for dissolving the TLS Supervisor position. According to Amtrak, it was Hollaway who decided to reorganize the structure of TLS's supervisors, which resulted in eliminating Plaintiff's TLS Supervisor position. (Amtrak's SUF ¶ 87.) But Cavanaugh testified that it was Keefe and Murphy who made the decision to eliminate Plaintiff's position, and that Hollaway specifically told Cavanaugh that it was not his decision. (Pl.'s Opp'n Ex. C, Cavanaugh Dep. 26:7–18.) Cavanaugh's testimony, if believed, would undermine Amtrak's assertion that Hollaway reorganized the structure of TLS's supervision for neutral reasons, and subvert Amtrak's preferred narrative of how the TLS position came to be eliminated. In other words, Plaintiff has produced evidence that could cause a reasonable jury to disbelieve Amtrak's non-discriminatory reason for abolishing Plaintiff's supervisor position.

Amtrak asks the Court to discount Cavanaugh's testimony because Cavanaugh was new to the engineering department and was still becoming familiar with the processes when the TLS Supervisor position was eliminated. But whether to credit Cavanaugh's testimony is a question for the jury. Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998). At this stage, Plaintiff has presented sufficient evidence of pretext to survive summary judgment. Amtrak's Motion for Summary Judgment on Plaintiff's race discrimination claims will be denied.

### C. Plaintiff Did Not Exhaust His Hostile Work Environment Claims Under Title VII and the PHRA

"The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). This exhaustion requirement also applies to Plaintiff's claims under the

10

PHRA. Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001).[2] Because exhaustion is an "essential part[] of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action," a federal court cannot consider a hostile work environment claim if it is outside of "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." Ostapowicz, 541 F.2d at 398–99.

Here, Plaintiff filed a charge with the EEOC, and checked the boxes for race and color discrimination, as well as retaliation, but did not check the box indicating that his charge related to a "continuing action." Within Plaintiff's charge, he alleged as follows:

> I applied and secured the job of Supervisor of the TLS on January 29, 2018. On February 3, Amtrak abolished my position at Andrew Keefe's initiative. I am convinced that this was all racially motivated. Like my white predecessor in that job who held it for over three years[,] I would have been able to collect any and all overtime amounting to approximately $200,000 a year. However[,] I had to bid for a newly-advertised position called the Supervisor for TLM (track laying machine) which I secured on February 26, 2018. The net result is that I am not able to work any and all overtime as the senior and only full-fledged supervisor of the entire unit and am being financially hindered. My union, ARASA, considers this to be a direct violation of the Collective Bargaining Agreement by AMTRAK.

(Amtrak's MSJ Ex. C, Robinson Dep. Ex. 7.)

Plaintiff's allegations describe a single instance of discrimination premised on the abolishment of his supervisor position, and do not mention the hostile work environment claims he now brings. Neither Amtrak nor the EEOC could have expected a hostile work environment claim to emerge from the discrete allegations in Plaintiff's EEOC charge. See Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 414 (3d Cir. 2010) (non-precedential) (affirming summary judgment

---

[2] Plaintiff's hostile work environment claim under Section 1981, however, did not require him to exhaust administrative remedies. Cheyney State Coll. Faculty v. Hufstedler, 703 F.2d 732, 737 (3d Cir. 1983).

on Barzanty's unexhausted hostile work environment claim because "Barzanty provided no facts that suggest a hostile work environment, and she did not check the box indicating her charge was a 'continuing action.'").

Plaintiff argues that his hostile work environment claims fit "hand-in-hand" with his discrimination claims. (Pl.'s Opp'n 25.) But "[h]ostile environment claims are different in kind from discrete acts." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). Plaintiff's hostile work environment claims depend on a broader range of facts than his discrimination claims, including comments occurring years before the decision to dissolve his position, and comments untethered from that decision. Because Plaintiff did not include any of those facts in his EEOC charge, or indicate that his charge was a continuing action, he failed to exhaust his administrative remedies as it relates to his hostile work environment claims. Amtrak's Motion for Summary Judgment on Plaintiff's hostile work environment claims under Title VII and the PHRA will therefore be granted.

### D. Plaintiff Has Produced Evidence of Severe and Pervasive Hostility to Support his Section 1981 Claim

A Section 1981 hostile work environment claim is subject to the same burden-shifting analysis as Plaintiff's discrimination claims. Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017). Plaintiff's prima facie case requires proof of the following elements:

1) the employee suffered intentional discrimination because of his/her [race],

2) the discrimination was severe or pervasive,

3) the discrimination detrimentally affected the plaintiff,

4) the discrimination would detrimentally affect a reasonable person in like circumstances, and

5) the existence of *respondeat superior* liability [meaning the employer is responsible].

Id. (alterations in original) (quoting Mandel v. M & Q Packing Corp., 706 F.3d 157, 167 (3d Cir. 2013)).

Here, Amtrak only contests whether its conduct was severe or pervasive. For harassment to be severe or pervasive, it must "amount to a change in the terms and conditions of employment . . . ." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). There is a genuine issue of fact concerning whether Amtrak maintained a hostile work environment. Plaintiff has recounted instances in which he asserts that his former supervisor, Frank Kruse, manipulated overtime assignments to benefit those with an "Irish Connection" over black employees. When black employees raised this issue, Kruse asked why the "brothers" always had to complain. (Pl.'s Opp'n Ex. E, Robinson Dep. 136:20–22.) Plaintiff has also identified statements by Kruse that Plaintiff's "dark ass [wa]s lucky that [he] got a job," (id. at 135:12–15), and that he did not want a "threatening black man" to be an assistant supervisor, (id. at 138:14–19.) A reasonable jury could find that the conduct in this case created an environment that communicated to Plaintiff that he would be relegated to a subordinate position and restrained from advancing because of his race. Thus, Amtrak's Motion for Summary Judgment on Plaintiff's Section 1981 hostile work environment claim will be denied.

### VII. CONCLUSION

For the reasons stated above, Amtrak's Motion for Summary Judgment will be granted as to Plaintiff's hostile work environment claims under Title VII and the PHRA, but will otherwise be denied. An appropriate Order follows.

O:\CIVIL 19\19-1881 Robinson v Amtrak\19cv1881 Memo re Motion for Summary Judgment.docx